UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHNNY WILLIAMS,

      Petitioner,

                                CASE NO. 5:06-CV-12836
   v.                         JUDGE JOHN CORBETT O'MEARA
                                MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH T. MCKEE,

      Respondent.

_____/


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION .......................................................................................... 1

II.    REPORT ......................................................................................................... 1
    A.     *Procedural History* ........................................................................... 1
    B.     *Factual Background Underlying Petitioner's Conviction* .......................... 4
    D.     *Right to Present Defense (Ground 1)* ................................................. 9
         1.     *Clearly Established Law* ...................................................... 9
         2.     *Analysis* ........................................................................ 11
    E.     *Jury Instruction (Ground 3)* ........................................................... 13
         1.     *Clearly Established Law* .................................................... 13
         2.     *Analysis* ........................................................................ 14
    F.     *Ineffective Assistance of Counsel* ..................................................... 15
         1.     *Clearly Established Law* .................................................... 16
         2.     *Failure to Communicate Plea Bargain Details (Ground 2)* ......... 17
         3.     *Counsel's Failure to Object to the Jury Instructions (Ground 3)* ................. 19
    G     *Conclusion* ..................................................................................... 20

III.   NOTICE TO PARTIES REGARDING OBJECTIONS ......................................... 20

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Johnny Williams, is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

2.     On June 12, 2002 petitioner was convicted of felony murder, MICH. COMP. LAWS § 750.316(1)(b), assault with intent to commit murder, MICH. COMP. LAWS § 750.83, two counts of armed robbery, MICH. COMP. LAWS § 750.529, and felony-firearm, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.[1]  On July 1, 2002, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, three concurrent terms of life imprisonment on the assault and robbery convictions, and a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.     On December 16, 2003, petitioner, through counsel, filed a motion to remand the case to trial court pursuant to MICH. CT. R. 7.211(C)(1) to allow the petitioner to supplement the record and move for a new trial. This motion was filed concurrently with the petitioner's brief to the Michigan Court of Appeals.

4.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT VIOLATED DEFENDANT'S COMPULSORY PROCESS AND DUE PROCESS RIGHTS BY NOT PERMITTING HIM TO FULLY PRESENT HIS DEFENSE.

II.     THE TRIAL COURT REVERSIBLY ERRED IN REFUSING TO ALLOW A PLEA OFFER TO BE REOPENED AFTER DEFENSE COUNSEL ACKNOWLEDGED HE HAD BEEN CONSTITUTIONALLY INEFFECTIVE FOR MISINFORMING THE DEFENDANT ABOUT PARAMETERS OF THAT OFFER.

_____

[1]This was petitioner's second trial in the matter.  Petitioner's first trial ended in a mistrial due to juror misconduct.

III. MR. WILLIAMS WAS DENIED HIS DUE PROCESS RIGHT TO PROPER CONSIDERATION OF LESSER OFFENSES, WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY THAT IT DID NOT HAVE TO COME TO A UNANIMOUS AGREEMENT AS TO WHETHER MR. WILLIAMS WAS GUILTY OF FELONY MURDER OR ASSAULT WITH INTENT TO MURDER BEFORE CONSIDERING THE LESSER CHARGES, OR, IN THE ALTERNATIVE, DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL DUE TO HIS TRIAL ATTORNEY'S FAILURE TO OBJECT TO THE ERRONEOUS INSTRUCTION.

IV. ONE OF THE ARMED ROBBERY CONVICTIONS AND SENTENCES MUST BE VACATED, AS IT CONSTITUTED THE UNDERLYING FELONY FOR THE FELONY-MURDER CONVICTION AND THUS VIOLATES MR. WILLIAMS' CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY.

The court of appeals reversed and vacated the petitioner's second conviction and sentence for armed robbery. It found no merit to the petitioner's other claims and affirmed his convictions and sentences. *See People v. Williams*, No. 245267, 2004 WL 1620848 (Mich. Ct. App. July 20, 2004) (per curiam).

5. Petitioner, proceeding *pro se*, sought leave to appeal the issues raised in the Michigan Court of Appeals to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Williams*, 472 Mich. 878, 693 N.W.2d 821 (2005).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 19, 2006. As grounds for the writ of habeas corpus, he raises three claims:

I. DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT VIOLATED DEFENDANT'S COMPULSORY PROCESS AND DUE PROCESS RIGHTS BY NOT PERMITTING HIM TO FULLY PRESENT HIS DEFENSE.

II. THE TRIAL COURT REVERSIBLY ERRED IN REFUSING TO ALLOW A PLEA OFFER TO BE REOPENED AFTER DEFENSE COUNSEL ACKNOWLEDGED HE HAD BEEN CONSTITUTIONALLY

INEFFECTIVE FOR MISINFORMING THE DEFENDANT ABOUT PARAMETERS OF THAT OFFER.

III.     MR. WILLIAMS WAS DENIED HIS DUE PROCESS RIGHT TO PROPER CONSIDERATION OF LESSER OFFENSES, WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY THAT IT DID NOT HAVE TO COME TO A UNANIMOUS AGREEMENT AS TO WHETHER MR. WILLIAMS WAS GUILTY OF FELONY MURDER OR ASSAULT WITH INTENT TO MURDER BEFORE CONSIDERING THE LESSER CHARGES, OR, IN THE ALTERNATIVE, DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL DUE TO HIS TRIAL ATTORNEY'S FAILURE TO OBJECT TO THE ERRONEOUS INSTRUCTION.

7.     Respondent filed his answer on January 3, 2007. He contends that petitioner's claims are procedurally defaulted, not cognizable, or without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in petitioner's brief on appeal in the Michigan Court of Appeals:

The crimes in question took place at 17185 McDougall Street in Detroit on December 17th, 2001. The shootings occurred in the living room of an abandoned house where drugs were often sold. The first victim, Charles Harris, was shot in the chest and died instantly. The second victim, Audreal Jenkins, survived. Having been shot in the stomach, Mr. Jenkins attempted to crawl outside. He yelled for help, prompting the neighbor to telephone the police. (II,66). When the police arrived, Mr. Jenkins named Defendant Williams, then 16 years old, as the perpetrator. At that point, Mr. Jenkins lay bleeding, halfway between the porch and the house. (II, 80).

Mr. Williams offered an alibi for the night in question. He testified he spent the evening at a friend's house, playing video games and celebrating the birthday of Tiffany Robinson. Two witnesses supported his alibi. (III, 14-53). No other witnesses besides Mr. Jenkins placed him at the scene of the shootings, and no forensic evidence was presented linking him to the crime.

At the time of the shooting, Mr. Williams and Mr. Jenkins had known each other for five years. No animosity existed between the two men; they were, as Mr. Jenkins testified, friends. (II, 52). The testimony differed as to whether the two men sold drugs together. Mr. Jenkins claimed they did, and Mr. Williams said they did not. At trial, Mr. Jenkins described the night of the shooting and how he feared imminent death. He identified Mr. Williams in court as the man he said shot him. (II, 68-69).

In describing the events of the night of December 17th, Mr. Jenkins claimed

4

that the three of them – Mr. Harris, Mr. Williams and himself – had been sitting in the living room when Mr. Williams went outside briefly and talked to some people in a car that had just pulled up. Returning alone, Mr. Williams allegedly picked up a gun, and, pointing it at Mr. Harris and Mr. Jenkins, demanded money, shot them and then fled. Mr. Jenkins maintained that Mr. Williams took narcotics and four to five hundred dollars from him during the robbery. (II, 59-65).

Both money and drugs were recovered from the crime scene. Thirty-one grams of crack cocaine was [sic] found in the living room, according to the testimony of Mr. Horan, an evidence technician for the Detroit Police Department. (II, 41). Eighteen bags of heroin were removed from the pockets of Mr. Harris, according to Officer Jessica Jandura, a patrol officer who responded to the emergency call. (II, 85). A hundred and twenty dollars was in possession of Mr. Jenkins, according to Sergeant Arlie Levier of the Homicide Unit of the Detroit Police Department. (II, 123).

At trial, the prosecution presented ten witnesses, along with evidence depicting the crime scene. Mr. Horan testified the doors and windows of the house remained intact, suggesting a lack of forced entry. No print, hair fiber or DNA evidence was offered into evidence. The house was littered with shell casings. At least eight were recovered from the crime scene: both in the living room and in the dinning room. The gun that caused the fatal wound to Mr. Harris was a Winchester, as later testimony revealed. Only three shell casings from the Winchester were found in the living room, where Mr. Jenkins said the shootings occurred.

Dr. Cherly Lowes, the medical examiner, testified as to the manner of Mr. Harris's death. She said that Mr. Harris faced the person who shot him in the chest, and that the shooter stood anywhere from 3 to 10 feet away from him. (II, 132-144)

Police officers describing the crime scene at trial detailed how Mr. Jenkins named Mr. Williams as the perpetrator. Mr. Jenkins described him as 5'6 with a medium complexion, known by the street name "Oogie." Additionally, Mr. Jenkins told the officers of the places that Mr. Williams frequented – including Hasse Street and Six Mile. The police also testified that Mr. Jenkins, while bleeding profusely, talked of his fear of death. One police officer indicated that he thought Mr. Jenkins might die that night. (II,92).

At the end of the trial's second day, the possibility of a plea agreement arose. The prosecution had rested its case, but indicated an offer to allow Mr. Williams to plead guilty to second degree murder, the assault charge, and to felony-firearm, in exchange for dismissal of the robbery counts and concurrent sentences with a minimum term of 16 years on the murder and assault convictions. (II, 149). Defense counsel first indicated that Mr. Williams was going to accept the agreement, but then stated Defendant was going to reject the offer and have the trial continue. (II, 150-151). However, within a half an hour, Mr. Powers approached the bench, explaining there had been a misunderstanding and asking that the plea offer be reopened, stating: "In discussing this matter with my client, it may have been my fault in terms of not explaining the maximum sentence to him, and he, when hearing that here for the first time. . . . I didn't have an opportunity to explain the maximum. He may have had a misimpression of what we were talking about." (II, 155-56).

Judge Ryan refused to allow the plea negotiations to be reopened, or to allow defense counsel to further consult with Mr. Williams, stating: "This trial was mistried once before. He had the time between the last time of this trial and now. We've already gone through the prosecution's case in chief, they've rested, and too late, we're going to verdict." (II, 156). Additionally, Judge Ryan stated Mr. Williams could now only plea as charged because "he's had all the time in the world to resolve this case." (II, 155). No testimony had been presented between the time the plea offer was first made and the point at which defense counsel requested that the offer remain open.

After the judge refused to reopen the plea negotiations, Mr. Powers requested bench warrants for two witnesses, Ms. White and Mr. Fisher, neither of whom were then in court. While granting the warrant, the judge expressed doubt as to the relevancy of Ms. White's testimony: "So I'm not even quite certain how relevant her testimony would be. She heard something from somebody who heard something from somebody else. So none of that–I mean we're compound–compounding speculation and hearsay." (II,157).

On the third day of trial, Mr. Powers began to present the defense. He first proposed to call Eddie Beauford, a relative of Mr. Jenkins. In explaining the point of the testimony, Mr. Powers said that Mr. Beauford had told both Ms. White and Mr. Fisher that Mr. Jenkins claimed not to have needed a walker and that there was another shooter in the McDougall house on the night of the crime.

Mr. Powers indicated he expected Mr. Beauford to be a hostile witness. As he explained to Judge Ryan, his strategy was to impeach Mr. Jenkins with Mr. Beauford's testimony, although he admitted that he expected Mr. Beauford to deny ever having this conversation with Ms. White and Mr. Fisher.

Judge Ryan refused to allow Mr. Beauford to be called as a witness, stating that no foundation had been laid during the cross-examination of Mr. Jenkins. In the judge's estimation, no questions had been asked about the need for a walker or the existence of another shooter. He ruled it was inappropriate for Mr. Powers to have his witness corroborate the story of the prosecution, even if it was only to impeach him. (III, 8-9). Judge Ryan then limited the defense's testimony to only that relating to alibi.

Before any witnesses testified that third morning, Mr. Powers requested an adjournment because Jowana Caleb, an alibi witness, had not yet appeared. He requested the judge issue a bench warrant to obtain the presence of Ms. Caleb, a minor. The judge refused, referring again to the fact this was Mr. Williams' second trial: "No adjournments. I mean this is the second time this case has been tried." (III, 10).

Mr. Powers then presented the defense. Defendant Williams denied having shot Mr. Jenkins or killing Mr. Harris. Mr. Williams did admit to opening up the abandoned McDougall house to sell drugs, primarily with Mr. Harris. Although Mr. Williams acknowledged the existence of a house gun for protection, he denied knowing how to operate it. (III, 15-20, 28).

Mr. Williams offered alibi testimony. He asserted that he spent the evening of December 17th, 2001, at a house on Coventry Street with his friends, Jowana

Caleb and Holliway Roberts. Arriving at 4:30 in the afternoon, Mr. Williams said that he stayed there until the next morning when a family friend called to tell him about the murder at the McDougall house. The family friend had feared that Mr. Williams himself had been one of the victims.

During cross-examination, Mr. Williams stated he had been smoking marijuana that night with his friends. According to Mr. Williams, Mr. Roberts arrived at 9 in the evening, and Mr. Williams fell asleep around 9:45. (III, 24).

The defense's second witness was Mr. Roberts, who related the timing of the events in a slightly different order than had Mr. Williams. He stated Mr. Williams was at his house on Coventry on December 17th, celebrating the birthday of a friend, Tiffany Robinson. He testified he and Mr. Williams were been playing video games together on the night in question until 1:00 am. (III, 31-38).

The third defense witness was Ziechidias Caleb. He told of the celebration for the birthday of Tiffany Robinson on December 17th. Since he had been at work, he did not arrive to the Coventry house until a little before midnight. He observed Mr. Williams here, joking and laughing and playing video games. After Mr. Caleb's cross-examination, Mr. Powers introduced the birth certificate of Tiffany Robinson, showing a date-of-birth as December 17, 1986. (III,49-59).

At that point, the defense rested. The jury took a short break, and, when the trial resumed, Mr. Powers made a motion to reopen the proofs to allow the testimony of Ms. Jowana Caleb, who had just arrived at the courthouse. The judge denied this request, offering no explanation. (III, 62). The trial than moved to closing statements.

The court instructed the jury on the charged offenses, and on the lesser included offenses of second degree murder and assault with intent to do great bodily harm less than murder. (III, 97-103). During the instructions, Judge Ryan deviated from the language of CJI2d 3.11 when instructing the jury as to the order of consideration of these lesser included offenses. He omitted the phrase "or if you are unable to agree on the greater offense, you may turn to the lesser one," saying instead: "If you believe that the defendant is not guilty of Felony Murder or Assault With Intent to Murder, you can consider the less serious offense." (III, 110). There was no objection to this instruction.

The jury found Mr. Williams guilty on all counts.

Def.-Appellant's Br. on Appeal, in *People v. Williams*, No. 245267 (Mich. Ct. App.), at 1-7.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Right to Present Defense (Ground 1)*

Petitioner first contends that the trial court abused its discretion in denying the motion to reopen proofs to allow an alibi witness, Jowana Caleb, to testify. The Court should conclude that the petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408. Although the right to present a defense is fundamental, it is not absolute. Thus, the right must yield to other constitutional rights*, see e.g., United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308. A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "'whether

the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001) (alterations by quoting court).[2]

2.      *Analysis*

Petitioner claims the trial court abused its discretion by refusing to reopen proofs for an alibi witness. The Michigan Court of Appeals agreed with petitioner that the trial court had erred in failing to reopen the proofs, but held that the error was harmless. *Williams*, 2004WL 1620848, at * 1. The court reasoned:

> [T]he trial court denied defendant's request to reopen the proofs, and gave no reason. It cited no prejudice to the prosecutor, no undue advantage to defendant, and no unwarranted disruption. This constituted an abuse of the trial court's discretion. However, we find that the trial court's refusal to reopen proofs was harmless because the evidence of the defendant's guilt was overwhelming.

*Id.*

This case is similar to *United States v. White*, 583 F.2d 899, 902 (6th Cir.1978). At trial in *White*, disinterested witnesses and the co-defendants implicated the defendant in robbery. *See id.* at 900. After the close of all the evidence, the defendant moved to reopen the defense to present an alibi witness. *See id.* at 901. However, the petitioner did not disclose the witness's name to the opposing party and failed to comply with notice provisions; the district court denied the motion. *See id.* Considering prejudice to the opposing party, whether the defendant disclosed the identity of the

---

[2] The test to determine if a petitioner has been denied his right to present a defense, in which the Court determines if the trial court's exclusion of evidence infringed upon the "weighty interest of the accused," subsumes the harmless error analysis.

witness, and the weight of evidence supporting the defendant's guilt, the Sixth Circuit concluded: "[B]ecause the jury did not believe appellant's alibi witnesses who did testify as well as appellant's own version of the facts when he took the stand in his own defense, it is doubtful the jury would have believed the alibi testimony of an additional witness." The court reasoned that the district court did not abuse its discretion after consideration of these factors.

Similarly, as in *White,* the trial court did not permit alibi witness Jowana Caleb to testify after the closing of proofs. Ms. Caleb was expected to support the defense's alibi. The petitioner's attorney complied with disclosure requirements for avoiding prejudice to the prosecution, and the prosecution did not object. Ms. Caleb arrived at the courthouse after the defense had closed its proofs but before closing arguments. The defense moved to reopen proofs to allow Ms. Caleb to testify, and the trial court denied the motion. *Williams*, 2004 WL 1620848, at * 1. The Michigan Court of Appeals affirmed the trial court's decision and held that the evidence of the petitioner's guilt was overwhelming:

> First, defendant's victim testified that defendant shot him. The victim's credibility was heightened by the fact that he accused defendant while lying seriously wounded in a pool of his own blood, believing he was about to die. Dying declarations have a high indicia of reliability. *People v. Malone*, 445 Mich. 369, 402 n 12; 518 NW2d 418 (1994). Second, the testimony of defendant's two alibi witnesses was inconsistent with that of defendant. Defendant testified that he went to sleep around 10:00 p.m. on the night of the shootings. One of defendant's alibi witnesses testified that defendant was awake playing video games as late as 1:00 a.m., and the other testified that defendant was still awake at 3:00 a.m. Defendant testified that he left the house at 10:00 a.m. the next morning, but one witness testified that defendant was still asleep in bed at noon. One witness testified that he told "everybody" that defendant was with him on the night of the shootings, but did not know what time of day the shootings occurred or what day of the week it was. Another witness testified that the witness who arrived late was not even in the same house as defendant on the night of the shootings. Finally, defendant has not shown that Caleb's testimony was material. Defendant's own witness testified that Caleb was not even in the same house as defendant on the night of the shootings, but, instead, in the house next door.

*Id.* In addition, the defendant did not offer proof or submit an affidavit that the witness' testimony

would not be cumulative. Here, as in *White*, there is no indication that Caleb's testimony would have clearly exonerated petitioner. On the contrary, the evidence against petitioner was strong, consisting of the testimony of the victim, and there was evidence that Caleb could not even offer an alibi at all. Furthermore, the inconsistent testimony of petitioner's other two alibi witnesses with the petitioner's testimony provided strong evidence of his guilt. Thus, the Court should conclude that the exclusion of the Caleb testimony did not "infringe upon a weighty interest" of petitioner. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Jury Instruction* (*Ground 3*)

Petitioner next contends that the trial court erred in instructing the jury and denied him his right to due process right to proper consideration of lesser offenses. In particular, petitioner argues the trial court failed to instruct the jurors that they did not have to reach an unanimous agreement on the greater charges before considering the lesser charges. The Court should conclude that the petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

In reviewing the trial court's jury instructions, "[t]he question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). For habeas relief to be warranted, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 146. In determining the instruction's effect on the validity of the petitioner's conviction, "the well established proposition [is] that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 146-47 (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)). When reviewing ambiguous instructions, "we

inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).   The Court should be mindful that the Supreme Court has "'defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Id.* at 73 (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)).

In demonstrating that the erroneous jury instructions attack the constitutional validity of the state court judgment, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The fact that the instructions were incorrect under state law does not form basis for habeas relief. *Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

Petitioner contends that the trial court erred in instructing the jury that it must unanimously find him not guilty of first degree murder before considering the lesser offenses.  This claims fails, for two reasons.

First, the trial court did not instruct the jury that it had to reach unanimous agreement on the first degree murder charge before considering the lesser offenses.  The court instructed the jury:

>       As far as Felony Murder and Assault With Intent to Murder is concerned, there are a couple of different options that you may consider. When you discuss the case, you must consider the crimes of Felony Murder and Assault With Intent to Murder first. If you all agree that the defendant is guilty of those crimes, you may stop your discussions and return with your verdict.
>
>       If you believe that the defendant is not guilty of Felony Murder or Assault With Intent to Murder, you can consider the less serious crimes of Second Degree Murder and Assault With Intent to Cause Great Bodily Harm Less Than Murder.

> You can always– you can decide how long you want to spend on Felony
> Murder and Assault With Intent to Murder before discussing the lesser offenses, and
> you can always go back to First –Felony Murder or Assault With Intent to Murder
> after discussing the less serious charges of Great Bodily Harm Less Than Murder
> and Second Degree if you so desire.

Trial Tr., at 110. In reviewing the instructions in the context of the overall charge, the judge stated

that the jury could decide how much time to spend on felony murder and assault with intent to

commit murder charge; the judge did not directly or indirectly suggest the jury must reach a

unanimous agreement prior to discussing the lesser included offenses. Thus, the instruction did not

improperly limit the jury's ability to consider the lesser offenses. *See Pharr v. Israel*, 629 F. 2d

1278, 1279 (7th Cir. 1980); *Jamison v. Collins*, 100 F. Supp. 2d 647, 719 (S.D. Ohio 2000).

Second, even if the trial court's instruction did suggest to the jury that it must reach a

unanimous decision on the first degree murder charge before considering the lesser offenses, the

instruction was not unconstitutional. Although some courts have held that an acquittal first

instruction in the capital sentencing context may violation the Eighth Amendment by precluding the

jury from giving full effect to mitigating evidence, *see Davis v. Mitchell*, 318 F.3d 682, 685-89 (6th

Cir. 2003), no court has held that an acquittal first instruction given to a jury not considering

whether to impose a death sentence violates due process. Certainly, there is no clearly established

federal law under § 2254(d)(1) which prohibits the giving of such an instruction. *See Reyes v.

Dexter*, No. 07-0840, 2008 WL 594686, at *15 (C.D. Cal. Feb. 28, 2008); *Willover v. Scribner*, No.

C 04-01240, 2007 WL 2122641, at *6 (N.D. Cal. July 23, 2007). Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Ineffective Assistance of Counsel*

Petitioner contends that he was denied effective assistance of counsel by his attorney's

failure to effectively communicate details of the plea agreement and his failure to object to the jury instructions. The Court should conclude that the petitioner is not entitled to habeas relief on either of these claims.

1. *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id.* at 695.

      2.    *Failure to Communicate Plea Bargain Details* (*Ground* 2)

The petitioner contends he was denied effective assistance of counsel by his attorney's failure to effectively communicate the details of a plea agreement. During trial, the following exchange occurred regarding the prosecutor's plea offer:

> MR. MORAN: Second Degree Murder, plus Assault With Intent to Murder, those two offenses. I'll dismiss the armed robberies. But just so the court makes a finding on the record that we are severely prejudiced because the plea is in the middle of the trial, in case he attempts to withdraw his plea.
>
> THE COURT: There's not going to be any withdrawal. If he wants his trial, they've put their proofs in. He's having his trial. And if he wants to plead, first of all, there's not going to be any withdrawal of plea and we're done. I mean this is the final resolution of this matter. Do you understand that, Mr. Williams?
>
> DEFENDANT WILLIAMS: Yes, sir,
>
> THE COURT: All right.
>
> THE COURT: Be 16 to 30.
>
> DEFENDANT WILLIAMS: No.
>
> THE COURT: Did you indicate on there dismiss the armed robberies?
>
> MR. MORAN: Yes, dismiss the other charges.
>
> THE COURT: There's the form. What's he want to do?
>
> MR. POWERS: Wants to continue with the trial.
>
> THE COURT: Offer is off the table and the court will not accept any pleas.

Trial Tr., at 150-151. Later at trial, the petitioner's counsel conveyed to the Judge that he may not have explained the maximum sentence to his client:

> THE COURT: And unless he wants to plead as charged, he has a constitutional right to do that. Otherwise we're going to proceed. Thank you.
>
> MR. POWERS: Well, Judge–
>
> THE COURT: See you tomorrow morning.
>
> MR. POWERS: I need to make a record then.

THE COURT: Go ahead.

MR. POWERS: In discussing this matter with my client, it may have been my fault in terms of not explaining the maximum sentence to him, and he, when hearing that here for the first time –

THE COURT: He said he didn't want to do it and so the plea was withdrawn.

MR. POWERS: I know, but I didn't have an opportunity to explain the maximum. He may have had a misimpression of what we were talking about. And so on that ground, I'd ask the prosecutor to keep the offer open and the court receive it if I'm not going to talk to him right now.

THE COURT: I'm not inclined to accept any pleas at this point in time. All right. We have plenty of time at final conferences. This trial was mistried once before. He had the time between the last time of this trial and now. We've already gone through the prosecution's case in chief, they've rested, and too late, we're going to verdict. All right. And just have your witnesses prepared to testify tomorrow.

Trial Tr., at 155-156.

Petitioner contends that counsel's initial failure to properly explain the plea agreement constituted ineffective assistance of counsel. The court of appeals rejected this claim, explaining:

> Although failure to adequately communicate a plea offer may constitute ineffective assistance of counsel, defendant must prove by a preponderance of the evidence that an offer was made, that his attorney failed to communicate the offer, and that he was prejudiced, i.e., that he would have accepted the offer. *People v. Robert Williams*, 171 Mich.App 234, 241-242; 429 NW2d 649 (1988); see also *People v. Carter*, 190 Mich.App 459, 462, 476 NW2d 436 (1991), vacated on other grounds, 440 Mich. 870 (1992). The fault of defendant's attorney was not a failure to communicate a plea offer that defendant would have accepted, but a failure to communicate additional details that made the offer objectionable. When defendant learned the actual terms of the offer, he refused it. Since defendant has not shown that he would have accepted the plea, his claim of ineffective assistance must fail because defense counsel's failure to effectively communicate the terms of the plea agreement did not affect the outcome of the trial. See *Toma*, *supra* at 302-303.

*Williams*, 2004 WL 1620848, at * 1. The Court should conclude that this determination was reasonable.

To be entitled to relief on this claim, petitioner must show not only that counsel failed to

18

properly advise him regarding the plea, but also that he was prejudiced because he would have pleaded guilty had he been properly advised. *See Short v. United States*, 471 F.3d 686, 696 (6th Cir. 2006); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005); *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001). Here, although counsel thought that he had not adequately explained the maximum sentence to petitioner, the court did so, informing petitioner that the sentence under the plea would be "16 to 30." Petitioner immediately replied "no," and indicated through counsel that he did not want to accept the plea. Thus, the record establishes that petitioner was clearly uninterested in accepting a plea deal which would have resulted in a 16-30 year sentence, and petitioner does not indicate what more counsel could have told him about the maximum sentence under the plea deal that would have changed his mind. In these circumstances, petitioner cannot show that he was prejudiced by counsel's performance. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Counsel's Failure to Object to the Jury Instructions* (*Ground 3*)

Petitioner also contends that he was denied effective assistance of counsel by his attorney's failure to object to the jury instructions. Specifically, petitioner contends that the court gave an improper "acquittal first" instruction which directed the jury to reach unanimous agreement on the first degree murder charge before considering lesser offenses, and that counsel should have objected to this instruction. The court of appeals rejected this claim, concluding that the instructions were proper under state law:

> The trial court correctly informed the jurors that they could deliberate as long as they wished on both the principal and lesser included offenses. These instructions were sufficient to inform the jury that they could turn to the lesser offenses if they could not agree on the more serious offenses. Therefore, defendant was not prejudiced by his trial counsel's failure to object to omission of the section of the jury instructions.

*Williams*, 2004 WL 1620848, at * 2. This conclusion is supported by record. *See* Trial Tr., at 110

("You can always – you can decide how long you want to spend on the Felony Murder and Assault

with Intent to Murder before discussing the lesser offense, and you can always go back to First –

Felony Murder or Assault with Intent to Murder after discussing the lesser [sic] serious charges of

Great Bodily Harm Less Than Murder and Second Degree if you so desire."). As noted above in

connection with petitioner's jury claim, due process does not prohibit an acquittal first instruction,

and thus the sufficiency of the charge presents solely a question of state law. *See Williams v.

Anderson*, 460 F.3d 789, 811 (6th Cir. 2006) (outside the death penalty context, which is governed

by the Eighth Amendment, "acquittal first jury instructions only violate due process where state law

prohibits acquittal first instructions."). And because the state courts determined that the instructions

were proper as a matter of state law, counsel cannot be deemed ineffective for failing to object to

those instructions. *See Lee v. Ricks*, 388 F. Supp. 2d 141, 157 (W.D.N.Y. 2005) (counsel not

ineffective for failing to request instruction which was not warranted under state law). Accordingly,

the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G      *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law. Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: October 24, 2008

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on October 24, 2008.

s/Eddrey Butts
Case Manager